TJOFLAT, Circuit Judge,
dissenting:
I fully agree with the court that the sentence of probation Hayes received in this case of massive public corruption is shockingly low and should not have been imposed. In appealing the sentence, the Government treats the District Court as the scapegoat, as if placing Hayes on probation was all the court’s doing. The truth is that it was the Government’s doing. To ensure that Hayes was given adequate credit for cooperating in its investigation, the Government deliberately led the District Court to abandon the Sentencing Guidelines, which called for a prison sentence of 135 to 168 months,[1] and then to ignore the Supreme Court’s explicit instructions, in Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), on the procedure to use in fashioning an appropriate sentence. This set the stage for the court’s adoption of a fictitious Guideline range of 41 to 51 months and its creation of a downward variance to a sentence of probation.
In appealing Hayes’s sentence to this court, the Government deliberately avoids any discussion of the District Court’s procedural error.[2] To the contrary, it accepts the fictitious Guideline range the court adopted. All it complains of is the variance from that fictitious range to a sentence of probation, arguing that it is substantively unreasonable. Because it invited the procedural error, which, in turn, led to the complained-of substantive error, the “invited error doctrine” precludes the Government from prevailing in this appeal. Yet the court fails to acknowledge that a procedural error has occurred. Instead, it assesses the substantive reasonableness of Hayes’s procedurally flawed sentence — something the Supreme Court prohibits — and thereby avoids the need to grapple with the Government’s invited error.[3] I dissent from the court’s failure to invoke the doctrine and to send the Government hence without day.
In part I of this opinion, I briefly recount the facts giving rise to Hayes’s conviction and sentencing. In part II, I describe how the Guidelines are supposed to *1312 operate and will show how the Government and the District Court misapplied the Guidelines and set the stage for the sentence at issue. Part III outlines the role the courts of appeals play in reviewing a defendant’s sentence, pinpoints the procedural errors in this case, and explains why the invited error doctrine precludes the Government from capitalizing on its induced error and obtaining relief. Part IV concludes.
I.
From 2002 until 2006, James Hayes paid over $600,000 in bribes to Roy Johnson, the Chancellor of the Alabama Department of Postsecondary Education (the “ADPE”), which included: (1) a $124,000 payment to Johnson for expenses Johnson incurred in constructing his home, disguised as a payment to Johnson’s driver, Lanier Anderson Higgins, for work Higgins never performed; (2) a $23,850 payment to Johnson to fund a sound system in Johnson’s home, which Hayes disguised by using a third-party business to pay for the sound system and then reimbursing the business; (3) a $55,000 payment to Johnson’s son-in-law Greg Morgan, an attorney, for legal services he never provided; and (4) a $24,418.93 payment to the Retirement Systems of Alabama on behalf of the Dean of Nursing at Southern Union State Community College.
In exchange, Johnson ensured that Access Group Software, LLC, of which Hayes was founder and owner, would win contracts to provide software services and associated services. Most of the time Access was the low bidder. On the few occasions when it was not, Johnson instructed the college president to award Access the contract anyway. Johnson’s influence was such that the colleges bought from Access even when its products were inferior to those of other bidders. In total, Access’ gross revenue increased to over $14 million and its profits to $5 million.
Hayes’s involvement in the corruption at the ADPE began to unravel after a federal grand jury subpoenaed his bank records. Hayes immediately took steps to disguise the true nature of his relationship with Johnson, but his attempts to conceal his criminal activity failed, and he was arrested for bribery, in violation of 18 U.S.C. § 666(a)(2). After he realized the strength of the Government’s case against him, Hayes agreed to cooperate and assisted federal agents in their investigation of others involved in Johnson’s scheme.
On December 26, 2007, the Government filed in the United States District Court for the Northern District of Alabama an information charging Hayes in Count One with federal-funds bribery, in violation of 18 U.S.C. § 666(a)(2), and in Count Two with conspiring to launder money under 18 U.S.C. § 1956(a)(1)(B)®, in violation of § 1956(h). The information also included a forfeiture count, Count Three. It alleged that Hayes’s interests in the proceeds of the crimes charged in Counts One and Two amounted to at least $5 million and that such interests were subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The Government filed the information pursuant to a plea agreement it had reached with Hayes. Pursuant to that agreement, Hayes, on February 21, 2008, pled guilty to Counts One and Two and agreed to forfeit $5 million to the United States, representing his interest in the proceeds of the crimes alleged in those Counts.[4] The *1313 plea agreement contained a cooperation provision in which Hayes promised to provide truthful and complete information about Johnson’s bribery scheme to the Government’s investigators and at the Government’s request to testify before the grand jury and at the trial of anyone indicted for participating in the scheme. In return, the Government promised to recommend to the District Court at Hayes’s sentencing that the court depart downward from the applicable Guidelines range pursuant to U.S. Sentencing Guidelines Manual § 5K1.1, if Hayes’s cooperation rose to the level of substantial assistance for the reasons stated in § 5K1.1.[5]
II.
The Supreme Court has clearly prescribed the procedure a district court must follow in sentencing a defendant. It is a three-step process. First, the district court “begin[s] ... by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.” Gall, 552 U.S. at 49, 128 S.Ct. at 596 (citation omitted). Second, after arriving at the proper Guidelines range, the court must “giv[e] both parties an opportunity to argue for whatever sentence they deem appropriate.” Id. Third, the court must “consider all of the [18 U.S.C.] § 8553(a) factors to determine whether they support the sentence requested by a party.”[6] Id. at 49-50, 128 S.Ct. at 596. In doing that, the court will bear in mind that “[t]he Guidelines as written reflect the fact, that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate,” Rita v. United States, 551 U.S. 338, 349, 127 S.Ct. 2456, 2464, 168 L.Ed.2d 203 (2007), to “assure the meeting of the purposes of sentencing as set forth in [18 U.S.C. § ] 3553(a)(2),” 28 U.S.C. § 991(b). “[W]hen the [court’s] discretionary decision accords with the Commission’s view of the appropriate application of § 3553(a) in the mine run of cases, it is *1314 probable that the sentence is reasonable.” Rita, 551 U.S. at 351, 127 S.Ct. at 2465. “If [the court] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.” Gall, 552 U.S. at 50, 128 S.Ct. at 597. The court must “adequately explain” the reasons for arriving at the chosen sentence, and “a major departure should be supported by a more significant justification than a minor one.” Id. As the Supreme Court explained in Peugh v. United States, — U.S. -, -, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013), “sentencing decisions are anchored by the Guidelines.”
A.
Federal sentencing is an adversarial process, Rita, 551 U.S. at 351, 127 S.Ct. at 2465, with the Government and the defendant engaged in “a confrontation ... similar to that which occurs at a civil bench trial,” United States v. Scroggins, 880 F.2d 1204, 1209 (11th Cir.1989). The presen-tence report (the “PSI”) serves as the starting point for arriving at an appropriate sentence in the same way that a pretrial stipulation serves as the starting point for arriving at a judgment in a civil case. The PSI identifies all applicable Guidelines and Sentencing Commission policy statements, calculates the defendant’s total offense level[7] and criminal history,[8] states the resulting Guidelines sentencing range[9] and types of sentences available, and identifies any factor relevant to the appropriate type or length of sentence and any basis for departing from the Guidelines range. Fed.R.Crim.P. 32(d)(1). It also includes additional information such as a defendant’s history and characteristics, as well as assessments of any financial, social, psychological, and medical impact the defendant’s crimes had on the victims. Fed.R.Crim.P. 32(d)(2). The parties have an opportunity to object to the PSI. If objections are made, the Probation Office takes them into account and revises the PSI to the extent it deems necessary. Fed.R.Crim.P. 32(f). At least seven days prior to the commencement of the sentencing proceeding, the Probation Office submits to the parties and the court the final PSI, accompanied by an addendum listing the factual issues, and thus the correct Guidelines calculation, to be resolved at sentencing. Fed.R.Crim.P. 32(g).
In this case, the Probation Office prepared and submitted to the parties and the District Court a PSI reciting the facts underpinning the offenses described in Counts One and Two and setting out the appropriate sentencing options under the *1315 Guidelines for those counts. The PSI calculated a total offense level of 33 and a criminal history category of I and determined that the Guidelines prescribed prison terms for Counts One and Two of the information ranging from 135 to 168 months,[10] supervised release terms of two to three years, a fine of $17,500 to $175,000, restitution to ADPE of $2.4 million, and forfeiture as indicated in the plea agreement. Neither party objected to any of the PSPs factual statements describing the criminal activity or to the proceeds of that activity as depicted in the information. Nor did either party object to the PSI’s sentencing options, including its calculation of the range of imprisonment, 135 to 168 months. Nor did Hayes object to the PSPs requirement that he make restitution to the ADPE in the sum of $2.4 million.
Also prior to the sentencing hearing, the Government filed a Motion for Downward Departure Pursuant to U.S.S.G. § 5K1.1,[11] which sought to have Hayes’s sentence reduced based on his substantial assistance to the Government during its investigation of the bribery scheme. In its motion,[12] the Government urged the District Court, “[b]ased upon the defendant’s substantial assistance,” to “depart from total offense level 33 to level 25, which' results in an advisory guideline range of 57-71 months, [13] and impose a sentence of imprisonment of 60 months.” Doc. 22, at 1. The motion did not explain how Hayes’s substantial assistance could appropriately serve as the basis for lowering the total offense level or Guidelines range of 135 to 168 months. It provided no explanation because a legitimate explanation was not possible. [
Substantial assistance is wholly irrelevant in determining a total offense level.[14] *1316 And although the factors in § 5K1.1 are “not an exhaustive list,” courts are “prohibited from considering sentencing factors unrelated to the nature and extent of a defendant’s assistance in making § 5K1.1 departures.” United States v. Martin, 455 F.3d 1227, 1235-36 (11th Cir.2006). As such, a finding that the defendant provided substantial assistance cannot change the calculation of the total offense level or the “applicable Guidelines range” under Gall, because substantial assistance is unrelated to the determination of that range. See 28 U.S.C. § 991(b); 28 U.S.C. § 994(c)-(d) (listing factors the U.S. Sentencing Commission must take into account when creating offense levels — including “the grade of the offense,” “the deterrent effect a particular sentence may have on the commission of the offense by others,” and “the current incidence of the offense in the community and in the Nation as a whole” — and the factors to be considered in creating criminal history categories — including age, vocation and skills, community ties — but not mentioning substantial assistance as a basis for either).
In urging the court to create an arbitrary Guidelines range based on the § 5K1.1 factors, the Government invited the court to commit “procedural error.” See Gall, 552 U.S. at 51, 128 S.Ct. at 597 (describing significant procedural errors, including “failing to calculate (or improperly calculating) the Guidelines range”). This type of procedural error would normally be a ground for vacating the sentence and remanding the case for resen-tencing. See, e.g., United States v. Gupta, 572 F.3d 878, 890-92 (11th Cir.2009) (vacating and remanding a defendant’s sentence after the district court improperly calculated the total offense level).
Along with its motion, the Government filed a memorandum recommending that Hayes be sentenced to 60 months’ imprisonment. The memorandum stated:
In accordance with the written plea agreement, the Government must recommend a sentence that departs below the low end of the Guidelines range determined by the Court at sentencing if Defendant provided substantial assistance. As explained below, the Government believes the Guidelines range is correctly calculated in the [PSI] as 135-168 months. Based on the Defendant’s substantial assistance, and in light of the sentencing factors set for the in 18 U.S.C. § 3553(a), the Government believes a sentence of 60 months is reasonable.
Doc. 24, at 2. After reiterating that “the correct Guidelines range is 135-168 months,” the Government stated that it “believe[d Hayes’s] assistance warrants a downward departure from this Guidelines range to a sentence of 60 months.” Doc. 24, at 3. The memorandum proceeded to describe the § 3553(a) sentencing factors in general terms, and assured the court that a 60-month sentence was consistent with those factors. The Government did not reference the Guidelines range again, nor did it explain why a sentence that was more than 50 percent lower than the low end of that range comported with the § 3553(a) factors. The Government’s memorandum made no reference to creating a substitute offense level or Guidelines range based on Hayes’s substantial assistance.[15]
*1317 The Government’s § 5K1.1 motion and its Sentencing Memorandum presented the District Court with two contradictory propositions. A 75-month departure from the Guideline range of 135 to 168 months to a sentence of 60 months would not be substantively unreasonable because it would not impermissibly frustrate the sentencing goals of § 3553(a)(2)(A) and (B). At the same time, a 75-month departure from that range would be substantively unreasonable (which is why the § 5K1.1 motion asked the court to establish a new Guidelines range of 57 to 71 months).
To avoid this dilemma, the Government recommended in its § 5K1.1 motion that, based on the defendant’s substantial assistance, the District Court find a substitute offense level and Guidelines range — level 25 with a Guidelines range of 57 to 71 months — within which a sentence of 60 months could be imposed. But, as I have already explained, the court could not give effect to this Guidelines range recommendation because the law precluded it from doing so.
B.
1.
Hayes’s sentencing proceeding commenced on June 8, 2011. The District Court began the proceeding, as Gall instructs, by determining the applicable Guidelines range. After hearing no objections, adopted the PSI’s statements of fact and sentencing options. The court made specific findings that “the guidelines offense level is 33. The criminal history category is I. And the advisory guideline imprisonment range is from 135 months to 168 months.” Doc. 28, at 4. The 135- to 168-month range of imprisonment then be *1318 came the “applicable Guidelines range,” Gall, 552 U.S. at 49, 128 S.Ct. at 596, which “anchor[s] ... the district court’s discretion” in imposing a final sentence, Peugh, — U.S. at -, 133 S.Ct. at 2087.
2.
After fixing the applicable Guidelines range at 135 to 168 months, the court proceeded to Gall’s second step: “giving both parties an opportunity to argue for whatever sentence they deem appropriate.” 552 U.S. at 49, 128 S.Ct. at 596. The court began by taking up the Government’s § 5K1.1 motion. When the court asked the Government’s attorney, George Martin, to speak about his § 5K1.1 motion, he responded, “Judge, I have set out the defendant’s cooperation in the motion. I won’t belabor those points.... [W]e would ask the Court to grant [the § 5K1.1] motion and sentence the defendant below the guideline range to a term of imprisonment of 60 months.” Doc. 28, at 7 (emphasis added). In so requesting, Martin appears to have recognized that 135 to 168 months remained the applicable Guidelines range. At this point, he made no reference to the fact that his § 5K1.1 motion urged the court to create a new Guidelines range of 57 to 71 months.
After a brief discussion regarding restitution, the court returned to the § 5K1.1 motion:
THE COURT: The advisory guideline imprisonment range, as I previously stated, is between 135 months and 168 months. And the government is asking me based on substantial assistance to impose a sentence of 60 months. Correct; Mr. Martin?
MR. MARTIN: Based both on his substantial assistance and the [18 U.S.C. § ] 3553(a) [sentencing] factors.
THE COURT: I’m not supposed to mix those, am I, Mr. Martin?
MR. MARTIN: My recommendation of 60 months is based both on substantial assistance and a consideration of those factors, from my perspective. That is, considering the crimes that he committed on one hand and the other factors and, on the other hand, the assistance he gave to the government, we recommend and we think a reasonable sentence is 60 months under the totality of the circumstances.
THE COURT: Well, appropriately in your motion, ... you don’t list any [§ ] 3553(a) factors. You only list [§ ] 5K1.1 factors. And it is my belief that it is inappropriate for me to consider an amount by which to downwardly depart based on substantial assistance any factors other than substantial assistance, including the government’s evaluation of the value of that substantial assistance .... I’m certain there’s binding Eleventh Circuit case law to that effect.
MR. MARTIN: Your honor—
THE COURT: I understand that your [§ 5K1.1] motion is different from your sentencing memorandum. You’re just asking me in your sentencing memorandum not to vary below what you asked me to do on your 5K.
MR. MARTIN: What I did is instead of filing one thing that asked the Court to sentence him to the low end of the guidelines and on the other hand filing a document at the same time asking that you sentence him way below the bottom end of the guidelines, I filed documents as a complete package setting forth our recommendation ... and our reasoning for that recommendation, including both the [§ ] 3553(a) factors and the defendant’s substantial assistance. In the sentencing memorandum, I make it clear that our 60-month recommendation is based on both of those things.
*1319 THE COURT: You do in your memorandum. I totally agree. Do you agree with me that the binding case law in the Eleventh Circuit is that in ruling on a motion for downward departure pursuant to [§ ] 5K1.1, it is error for a district court to consider anything other than the substantial assistance?
MR. MARTIN: Yes, Your Honor, I do.
Doc. 28, at 16-18 (emphasis added).
Although this colloquy between the court and Martin is somewhat convoluted, it is clear that in filing what he called “a complete package,” Martin was providing the District Court with two alternative ways in which to give Hayes appropriate credit for his cooperation "with the Government. The court could sentence Hayes “to the low end of the guidelines” or it could sentence him “way below the bottom end of the guidelines.” The first alternative would require the court to lower the Guidelines range to 57 to 71 months and sentence Hayes to the low end of that range, 60 months. The second alternative would require the court to adhere to the applicable Guidelines range, 135 to 168 months, and sentence Hayes “way below the bottom end of the guidelines” to 60 months. The colloquy also demonstrates that the court and Martin both recognized that a defendant’s substantial assistance is not relevant in deciding the need for a sentence to satisfy § 3553(a)(2)’s sentencing objectives, i.e., the defendant’s substantial assistance cannot influence the offense level and the applicable Guidelines range. Rather, the nature and circumstances of the offense and the need for the sentence to attain § 3553(a)(2)’s objectives determine the offense level and Guidelines range. See 28 U.S.C. § 994(a). Thus, in asking Hayes’s attorney, Derek Drennan, to comment on the Government’s § 5K1.1 motion, the court instructed him “to speak only to the issue of substantial assistance because it would be error for [the court] to consider any other factor” in ruling on the motion. Doc. 28, at 18.
Drennan asked the court to grant the Government’s motion for the reasons stated in his Sentencing Memorandum. The court granted the motion, then asked Drennan, “[a]re you asking for a level of departure, or are you just asking that it be granted? Because it asks me to depart to 60 months.” Id. at 18-19. Drennan replied, “Yes. That is correct.” Id. at 19. Next, the court asked Drennan whether he thought 60 months’ imprisonment reflected the value of Hayes’s assistance. He responded, “[C]ertainly not. I don’t know that I have — can take a position as to the government’s motion.” Id.
The court, referring to the second of the two alternative ways Martin proposed for granting a § 5K1.1 departure, informed Drennan that “for the government to request a departure that’s greater than 50 percent is unusual, to say the least, in my experience. As a percentage, they’ve asked me to depart down a lot more than I’m accustomed to seeing.” Doc. 28, at 19-20.[16] As it turned out, the court did not depart from the applicable Guidelines range, 135 to 168 months. Instead, it adopted to Martin’s first alternative and created a brand-new offense level and arbitrary Guidelines range. In granting the Government’s § 5K1.1 motion, the court explained:
[I]t comes down to my opinion as to the appropriate amount of a departure. And I have the government’s recommendation. And they do it by months or *1320 range when they — although they come up with an offense level. That’s certainly not required. What they do is they come up with a number of months, which 60 months is actually five years, but it’s all done in months. But that’s helpful because it also may impact the fine. To have an offense level is helpful.
All right. Backing up, the Court finds that the government’s motion for a downward departure pursuant to [§ ] 5K1.1 based on the defendant’s substantial assistance to the government should be granted. The Court finds that the appropriate ... guideline level for consideration should be Level 22, which when combined with the criminal history category of I creates an advisory guideline range of 4,1 to 51 months and a fine range from $7,500 to $75,000.[17] And the supervised release term remains from two to three years.
In departing based on the government’s 5K motion, I discussed with and evaluated the significance and usefulness of the defendant’s assistance. And I discussed this both with the government and the defendant. And I considered both their writings and their statements here in court. And I specifically considered the government’s evaluation of the assistance rendered.
And I’ve talked about giving more weight versus less weight and how I agree with the government in giving more weight. It’s just that I am giving even more weight than the government gave on all these factors. And I’ve already said that a request for a departure that’s below 50 percent is unusual in my experience — my seven years[’] experience.
I considered the truthfulness, the completeness and the reliability of the information and testimony provided by the defendant.. I considered the nature and extent of the defendant’s assistance and this includes the fact that he identified a totally new target, Mr. Phillip Grace. He testified at least twice. The number of people who were convicted or pled guilty at least in part because of his testimony or willingness to testify and the number of hours he participated in meetings. The number of times he met with the government. His willingness to testify against targets of a state prosecution.
Doc. 28, at 24-26 (emphasis added).
As is apparent, the District Court’s creation of a new offense level and applicable Guideline range was based solely on Hayes’s substantial assistance, but the court did not explain how that assistance warranted the new range, a new “starting point and ... initial benchmark” for fashioning Hayes’s sentence. See Gall, 552 U.S. at 49, 128 S.Ct. at 596. The Government did not object to the District Court’s creating a new offense level and applicable Guidelines range because its § 5K1.1 motion had induced the court to do precisely that. With a new Guidelines range, 41 to 51 months, the court, at the Government’s behest, abandoned the “applicable Guidelines range,” id., which was supposed to “anchor ... the district court’s discretion” in selecting a final sentence, Peugh, — U.S. at -, 133 S.Ct. at 2087.
3.
The third and final step of the sentencing process prescribed by Gall required the District Court to “consider all of the § 3553(a) factors to determine whether *1321 they support the sentence requested by a party.”[18] Gall, 552 U.S. at 49-50, 128 S.Ct. at 596. “[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.” Id. at 50 n. 6, 128 S.Ct. at 597 n. 6. In considering these § 3553(a) factors, the court may conclude that there are other characteristics of the crime, the defendant, or the victims that are not accounted for by the Guidelines— that take the case out of the “heartland” of cases the Sentencing Commission drew on in prescribing the applicable Guidelines range.[19] In that situation, the court can impose a sentence outside of the Guidelines framework — in Guidelines parlance, a “variance.” U.S.S.G. § 1B1.1, background.
However, if the court wishes to sentence the defendant outside the applicable advisory Guidelines range, whether via departure or variance, it “must consider the extent of the deviation [from the Guidelines range] and ensure that the justification is sufficiently compelling to support the degree of the variance.... [A] major departure should be supported by a more significant justification than a minor one.” Gall, 552 U.S. at 50, 128 S.Ct. at 597.[20] “Even if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence.” Peugh, — U.S. at -, 133 S.Ct. at 2083 (emphasis added) (internal quotation marks omitted).
In this case, the District Court should have begun with the admittedly correct Guidelines range, 135 to 168 months, and then, with that range in mind, considered whether the § 3553(a)(2)(A) and (B) sentencing objectives could accommodate the parties’ requested sentences. Instead, the court adopted the Government’s first alternative suggestion; it used an arbitrary Guidelines range and considered the parties’ sentencing recommendations against that range. When the sentencing hearing resumed on July 13, 2011,[21] the court adhered to that approach, but, as the hearing unfolded, it did not adopt the Government’s recommendation to impose a sentence within the 57- to 71-month range.
The court began by reminding the parties that in granting the motion for a downward departure pursuant to [§ ] 5K1.1 based on the defendant’s substantial assistance to the government, I found that the appropriate guideline level for consideration should be Level 22, which when combined with a criminal history category I creates an advisory guideline range of Jpl months to 51 months and a fine range from $7,500 to $75,000 and a supervised release term of two to three years.
*1322 Doc. 29, at 10 (emphasis added). This statement confirmed that the court’s factual basis for creating the new Guidelines range was limited to Hayes’s substantial assistance. The Government did not object to the court’s adoption of the 41- to 51-month range, even though it had no legal foundation, because the Government had urged the court to adopt a new Guidelines range in the first place.
Having established 41 to 51 months as the “starting point and the initial benchmark” for determining the defendant’s sentence, see Gall, 552 U.S. at 49, 128 S.Ct. at 596, the court invited Drennan to discuss whether it should vary downward from that range. Drennan began by discussing the § 3553(a)(2)(A) factor, urging the court to consider that the colleges that bought Access’s software were still using it, and thus had sustained no loss, and the relative culpability of Hayes and Johnson, who instigated the criminal conduct. He then turned to the § 3553(a)(2)(C)-(D) factors, highlighting that Hayes had been the main caretaker of his elderly father and mentally disabled brother, both since deceased, after the prior caretaker, Hayes’s sister, was killed in a tornado that struck their residence; that Hayes was in poor health and nearly seventy; and that Hayes was not a risk to society and thus did not need rehabilitation. Hayes followed Dren-nan, apologized for participating in the bribery scheme, promised to satisfy his restitution and forfeiture obligations, and vowed to rehabilitate himself. These factors, which were unrelated to Hayes’s substantial assistance, were appropriate for the court to consider when determining whether to grant a variance.
Martin spoke next and arg-ued that “[t]he Court’s sentence should be one that punishes the defendant for this conduct. And it should be a sentence that deters others from engaging in such conduct.” Doc. 29, at 17-18. He concluded his argument by stating,
[A]s I stated at the first part of this sentencing hearing held last month, the government, based on all the factors, believed that a sentence of 60 months was a reasonable sentence. That is over 50 percent below the low end of the guideline range. And nothing has changed that since then to warrant a different recommendation. It was reasonable then. It’s reasonable now.
Id. at 21.
Turning to Martin’s argument that the defendant’s sentence should reflect the need for punishment and deterrence, the court said,
I don’t have any issues with your arguments that the defendant needs to be punished. And I don’t have any issues with the government’s arguments that people need to be deterred from committing white collar crimes and that sending them to jail is a strong deterrent to others and punishment to the person being sentenced.
What I don’t have and I didn’t ask for it, but maybe probation has, is because I do think one of the very, very significant things to consider in sentencing — all the [§ ] 3553(a) factors are important. And I feel like I have good information on all of the factors except the one about unwarranted sentence disparities among defendants.
Id. at 23.
The court then asked the probation officer, who was attending the hearing, about the sentences imposed on others member of the bribery scheme who had been convicted and sentenced. After she directed the court to the relevant portion of the PSI, which listed the sentences these other participants received, the court read into the record the sentence imposed in twelve of the cases, noting that five were proba *1323 tion and three were greater than 60 months’ imprisonment. The probation officer then directed the judge to a chart, which was not included in the PSI and which provided more information about those sentences. The chart listed two additional participants in the scheme, both of whom were sentenced to probation, as well as information for all fourteen participants regarding the crimes with which they were charged, the amount of loss attributed to each, the advisory Guidelines range in each case, and whether they pled guilty or were convicted.
After stating that the sentences the other participants received were relevant to § 3553(a)(6)’s command to avoid unwarranted sentence disparity, the court turned to the § 3553(a)(1) and (2)(A) and (B) factors: “the nature and circumstances of the offense,” “this defendant’s history and characteristics,” the need for “a sentence [that] promote[s] respect for the law and provide[s] just punishment for the offense,” “the need to afford adequate deterrence to criminal conduct by others,” and the need for “punishment that would deter other people who might consider similar conduct from committing that conduct.” Doc. 29, at 29-30. Regarding the § 3553(a)(2)(C) factor, the need for a sentence to deter the defendant from committing further crime, the court found that “this defendant does not pose any risk of further crimes to the public.” Doc. 29, at 30. After commenting on these § 3553(a) factors, the court returned to “the need to avoid unwarranted sentence disparities among similarly situated defendant” but said, “I don’t want anybody to think that that was ... the overwhelming factor.” Doc. 29, at 31-32.
Having considered the § 3553(a) factors, the court granted Hayes a downward vari-anee from the 41- to 51-month Guidelines range and sentenced him to probation for a term of 36 months, with not less than 6 nor more than 12 months home supervision.[22] The court found that “the sentence imposed is sufficient, but not greater than necessary to comply with the statutory purposes of sentencing and is reasonable when considering the sentencing factors found at 18 U.S.C. Section 3553(a).” Doc. 29, at 33.
C.
To summarize, the parties began the sentencing process by stipulating to the PSI’s finding that the appropriate offense level in this case was 33 and that the criminal history category was I. They agreed that the correct and therefore applicable Guidelines range was 135 to 168 months. The District Court accepted the PSI factual findings and Guidelines applications. In doing so, the court adhered to the Supreme Court’s instructions in Gall— that the first step in sentencing is to determine the applicable Guidelines range.
Then, the Government presented the court with two alternative approaches to use in determining Hayes’s sentence, both based on his substantial assistance. First, it could lower the offense level from 33 to 25, adopt a new Guidelines range of 57 to 71 months, and impose a sentence within that range, 60 months. Or it could depart from the applicable Guidelines range, 135 to 168 months, and impose a sentence of 60 months. The court adopted the Government’s first approach but lowered the offense level to 22 and the applicable Guidelines range to 41 to 51 months. In doing this, the court committed procedural error. See Gall, 552 U.S. at 51, 128 S.Ct. at 597. The court then compounded the error by *1324 treating the 41 to 51 months range as if it were based on the facts of the case and, after considering § 3553(a)(2)(C) and (D)’s sentencing factors, concluding that a downward variance to a sentence of probation was warranted.
III.
After the District Court pronounced sentence, the Government objected “to the procedural reasonableness of the sentence and to the substantive reasonableness of the sentence, including the extent of [the] Court’s downward departure pursuant to 5K and the reasonableness of the Court’s final sentence.” Doc. 29, at 35. On appeal, however, the Government reframes its objection. It abandons the procedural-reasonableness objection and “does not challenge the district court’s § 5K1.1 downward departure to a Guidelines range of 41-51 months.” Appellant’s Br. at 11 n. 3. It does so even though that Guidelines range is purely arbitrary and therefore erroneous. The Government then limits it challenge to the substantive reasonableness of the sentence on the ground that the downward variance from the 41- to 51-month range to a sentence of probation fails to reflect the seriousness of Hayes’s crime, does not adequately deter the general public from engaging in such crime, and is not justified by the need to avoid unwarranted sentencing disparities.[23]
As it did in the District Court, the Government invites us to disregard the Supreme Court’s instructions on the sequential steps a district court is to take in imposing a sentence under the Guidelines and the sequential steps a court of appeals is to take in reviewing the sentence. By framing its appeal as a challenge solely to the substantive reasonableness of Hayes’s sentence, the Government asks that we disregard Gall’s instruction that a court of appeals may not assess the substantive *1325 reasonableness of a sentence unless it first concludes that the sentence is procedurally reasonable. See 552 U.S. at 51, 128 S.Ct. at 597. The Government ignores the fact that even though it does not challenge the procedure by which Hayes was sentenced, the Supreme Court requires that we must satisfy ourselves that no procedural error occurred.
It is obvious to me that procedural error did occur. The District Court used an arbitrary Guidelines range as its Gall “starting point and ... initial benchmark” in arriving at Hayes’s sentence. See id. at 49, 128 S.Ct. at 596. Therefore, we may not review the substantive reasonableness of his sentence. Instead, we must vacate the sentence and remand the case for re-sentencing under the applicable Guidelines range, 135 to 168 months. The invited error doctrine precludes us from doing this, however, because the Government induced the error the District Court committed.
A.
As the Supreme Court has instructed, a court of appeals’ review of a criminal sentence is a two-step process. First it must “ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.” Gall, 552 U.S. at 51, 128 S.Ct. at 597.[24] Only then, after the court of appeals is certain that that no significant procedural error has occurred, can it turn to the substantive reasonableness of the sentence. Id. That is, the substantive reasonableness inquiry “[a]ssum[es] that the district court’s sentencing decision is procedurally sound.” Id. If the sentencing decision is not procedurally sound, it cannot be reviewed for substantive unreasonableness.[25]
We have recognized as much. For instance, in United States v. Barner, 572 F.3d 1239 (11th Cir.2009), we declined to discuss the substantive reasonableness of a sentence “because such an exercise cannot be undertaken until [the procedural] errors we have identified are addressed by the district court.” Id. at 1253 (citing Gall, 552 U.S. at 51, 128 S.Ct. at 597). Cf. Gupta, 572 F.3d at 888 (“Because we conclude that a remand is necessary to correct procedural errors, we decline to evaluate the substantive reasonableness of Gupta’s sentence. We do not know what sentence the district court will impose on remand. Thus, we would be rendering an advisory *1326 opinion if we were to pick a sentence and declare it to be reasonable.” (citation omitted) (internal quotation marks omitted).[26] Other circuits follow a similar approach. See, e.g., United States v. Carter, 564 F.3d 325, 330 n. 4 (4th Cir.2009) (“Having found the sentence procedurally unreasonable ... we cannot review the sentence for substantive reasonableness.”); United States v. Stephens, 549 F.3d 459, 465 (6th Cir.2008) (“If, and only if, the district court’s sentencing decision is procedurally sound, we will then consider the substantive reasonableness of the sentence imposed ....”) (internal quotation mark omitted)); United States v. Langford, 516 F.3d 205, 218 (3d Cir.2008) (“[T]he failure to start with the correct Guideline range is legal error that thwarts reasonableness review — that is, it cuts off our review process before we even reach the issue of reasonableness.”).[27]
It is only after the court of appeals is satisfied the district court correctly calculated the Guidelines range and did not otherwise commit procedural error that it can “consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.” Gall, 552 U.S. at 51, 128 S.Ct. at 597. The court of appeals needs an accurate Guidelines range because “[w]hen conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.” Id. (emphasis added). If the district court imposes a sentence below the applicable Guidelines range, the reviewing court “must give due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance.” Id. When evaluating the district court’s weighing of the § 3553(a) factors, the reviewing court is “obliged to remand for resentenc-ing if [it is] left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.” United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir.2008) (internal quotation marks omitted); see also United States v. Irey, 612 F.3d 1160, 1189 (11th Cir.2010) (en banc).
B.
The District Court in this case committed clear procedural error by lowering the Guidelines range to 41 to 51 months based on Hayes’s cooperation with the Government. Congress precluded the Sentencing Commission — in prescribing, in conformance with 28 U.S.C. § 994, the offense level for Hayes’s offenses — and the District Court — in determining, in conformance with § 3553(a)(2)(A) and (B), the need for Hayes’s sentence to satisfy the sentencing objectives of punishment and general deterrence — from considering substantial assistance provided to the Government. Because the District Court lowered Hayes’s offense level based on substantial assistance alone, it created a Guidelines range, 41 to 51 months, that lacked a legal foundation and was therefore arbitrary. The Government did not object because it encouraged the court to do this; after all, the Guidelines range it wanted the court to adopt, 57 to 71 months, was just as lacking *1327 in a legal foundation as the one the court ultimately chose. In asking this court to assess the substantive reasonableness of Hayes’s sentence, the Government is asking this court to review a sentence imposed without reference to the Guidelines. Reference to the applicable Guidelines range is unnecessary, the Government implies, because anyone with a conscience would know that a sentence of probation for the widespread bribery that occurred in this case in would be preposterous.
We cannot accept the Government’s request and at the same time obey the Supreme Court’s mandate in Gall. Gall precludes us from reviewing the substantive reasonableness of a sentence imposed without reference to the applicable Guidelines range. A sentence imposed without reference to that range is procedurally unreasonable. And a finding of procedural reasonableness is a necessary antecedent to substantive reasonableness. See Gall 552 U.S. at 51, 128 S.Ct. at 597; Barner, 572 F.3d at 1253.
This, of course, makes sense. If a district court imposes sentence without reference to a properly calculated Guidelines range, we lack an accurate benchmark from which to evaluate its substantive reasonableness. “[S]entencing decisions are anchored by the Guidelines and ... they remain a meaningful benchmark through the process of appellate review.” Peugh, — U.S. at -, 133 S.Ct. at 2083; see also Gall, 552 U.S. at 50 n. 6, 128 S.Ct. at 597 n. 6 (“The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.”). As Gall directs, the substantive-reasonableness analysis must “take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.” Gall, 552 U.S. at 51, 128 S.Ct. at 597 (emphasis added). As such, we should consider the substantive reasonableness of a sentence only “after [we have] determined that the district court’s sentencing decision is procedurally sound.” Pugh, 515 F.3d at 1190 (internal quotation marks omitted) (emphasis added). It is for this reason that this court and other courts of appeals will not evaluate the substantive reasonableness of a sentence in the face of significant procedural error. See, e.g., Barner, 572 F.3d at 1253; United States v. Carter, 564 F.3d 325, 330 n. 4 (4th Cir.2009); United States v. Stephens, 549 F.3d 459, 465 (6th Cir.2008); United States v. Langford, 516 F.3d 205, 218 (3d Cir.2008).
In the face of “significant procedural error,” Gall, 552 U.S. at 51, 128 S.Ct. at 597, such as occurred here in the District Court’s use of an arbitrary Guidelines range, our normal response would be to vacate the sentence and remand the case for further proceedings. However, the invited error doctrine precludes us from doing that.
C.
In moving the District Court to decrease Hayes’s offense level from 33 to 25 and to adopt a Guidelines range of 57 to 71 months based solely on an irrelevant criterion, substantial assistance, the Government brought the District Court’s procedural error on itself. To be sure, the range the court eventually chose wasn’t the one the Government proposed, but it was just as inappropriate as the Government’s. Both ranges reflected an intuitive reaction to Hayes’s cooperation; the District Court simply thought his cooperation was deserving of a bit more grace than the Government recommended. In the end, the Government accepts the court’s range without qualification. Appellant’s Br. at *1328 11 n. 3 (“The government calculates the size of the variance as 41 months because it does not challenge the district court’s § 5K1.1 downward departure to a Guidelines range of 41 to 51 months.”). And today, this court does as well.
In inviting the District Court to accept 41 to 51 months as the applicable Guidelines range, the Government also invited the District Court to depart or vary downward from that range for reasons unrelated to § 5K1.1 substantial assistance. The court could do this based on evidence indicating that a sentence in the 41 to 51 months range was not needed to satisfy § 3553(a)(2)(A) and (B)’s purposes of punishment and general deterrence.[28] At the end of the day, the court accepted the Government’s invitation and imposed a sentence of probation.
Although Hayes’s sentence is the product of procedural error that is plain on its face, we are not at liberty to correct the error. As we have explained countless times before, “[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling ... invited by that party. The doctrine of invited error is implicated when a party induces or invites the district court into making an error.” United States v. Love, 449 F.3d 1154, 1157 (11th Cir.2006) (citations omitted) (internal quotation marks omitted); see also United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir.2005); Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1294 (11th Cir.2002). The doctrine of invited error “stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal.” United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir.2009).
In the mine-run appeal, we would vacate the sentence and remand the case to the district court for resentencing. Here, we would instruct the court to follow Gall’s instruction and, in determining the extent of the § 5K1.1 departure from the applicable Guidelines range, 135 to 168 months, “consider all of the § 3553(a) factors to determine whether they support the sentence requested.” 552 U.S. at 49-50, 128 S.Ct. at 596.[29] In this case, however, we cannot remedy the procedural error because it was invited by the party seeking to challenge the sentence, the Government.
I say that the invited error doctrine applies even in a case where the defendant’s sentence is as absurd as the one here. The majority vacates the sentence in this case because the facts and circumstances surrounding the commission of Hayes’s crime demand a sentence far more serious than the one he received. Over a period of four years, Hayes’s bribes netted him over $5 million in profits and caused the victims to suffer losses of $2.4 million. To the citizens of Alabama aware of the magnitude of Hayes’s crime, a sentence of *1329 probation is outlandish, a mere slap on the wrist.
Applying the invited error doctrine and allowing Hayes’s sentence of probation to stand would breed disrespect for the rule of law in many quarters. Disrespect for the rule of law and the damage to the body politic that portends weigh heavily on one side of the scales of justice. However, the policies the invited error doctrine reflects weigh just as heavily on the other side of the scales. And they are several. I have already mentioned one: the doctrine vindicates respect for the courts by preventing “sandbagging” and “gamesmanship,” where a party gets a second bite of the apple at his adversary’s expense, and at the public’s expense as well. The public suffers because, without the doctrine, the courts’ dockets would become overcrowded, the cases of those standing in the queue waiting to be heard would be delayed, and the public’s respect for the courts would wane. Justice delayed is justice denied.
In seeking the vacation of Hayes’s sentence, the Government is gaming the system. But in a larger sense, it is obstructing the administration of justice in the Eleventh Circuit. Therefore, invoking the invited error doctrine, I would affirm Hayes’s sentence.
IV.
The court entertained this appeal as the Government’s brief requested. That is, it sidestepped the issue of whether the Hayes’s sentence is procedurally unreasonable and went straight to the issue of whether the sentence is substantively unreasonable. In doing so, the court purports to accept the statement in the Government’s brief, that it “does not challenge the district court’s § 5K1.1 downward departure to a Guidelines range of 41-51 months.” Appellant Br. 11 n. 3. I say that the court purports to do this because it is apparent to me that it finds Hayes’s sentence of probation substantively unreasonable not because it constitutes an unreasonable variance from a Guideline range of 41 to 51 months, but because it is an unreasonable departure from the applicable Guidelines range of 135 to 168 months. The court reveals this in the following passage of its opinion, which describes the criminal activity the 135- to 158-month range reflects.
But there are bribes, and then there are bribes. Mr. Hayes did not just give a one-time gratuity to a local zoning inspector to expedite a building permit for a pool. He paid over half a million dollars in bribes, over a four-year period, to a high-ranking Alabama official so that his company could continue to receive lucrative government contracts— efforts which, were rewarded by a corporate bottom line that got fatter by $5 million — and for that he received probation. As corruption cases go, this was bribery writ large, and on this record the district court’s significant variance of 41-51 months cannot stand.
Ante at 1309.
In short, the court should have focused on Gall’s third step, which required the District Court to “consider all of the § 3553(a) factors” in light of the correct Guidelines range, 135 to 168 months, “to determine whether they supported] the sentence requested by” Hayes — -specifically, the sentence it ultimately imposed, probation. See Gall, 552 U.S. at 49-50, 128 S.Ct. at 596. After this, the court should have asked whether the District Court “adequately explain[ed]” how a sentence of probation squared with the need for Hayes’s sentence to provide just punishment and to deter others from emulating his criminal conduct. Id. at 50, 128 S.Ct. at 597.
*1330 Putting this aside, I am concerned about the court’s mandate. What instruction does it give the District Court? Section 3742 of Title 18 of the U.S.Code states, in pertinent part, that
If the court of appeals determines that—
(2) the sentence is outside the applicable guideline range and ... the departure is ... plainly unreasonable, it shall state specific reasons for its conclusions and—
(B) if it determines that the sentence is too low ..., it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate, subject to subsection (g).
18 U.S.C. § 3742(f)(2). Subsection (g) states that “[a] district court to which a case is remanded pursuant to subsection ... (f)(2) shall resentence a defendant in accordance with section 3553 and with such instructions as may have been given by the court of appeals.” § 3742(g).
I suggest that the court’s mandate tells the District Court that a sentence of probation on the facts stated in the PSI is substantively unreasonable as a matter of law. The court’s reliance on those facts, as opposed to hypothetical facts that would support a Guidelines range of 41 to 51 months,[30] indicates that the applicable Guidelines range is 135 to 168 months.
I return to what I state in the introduction to this opinion: the invited error doctrine requires that the judgment of the District Court be affirmed.

. Although Hayes was to receive two sentences — one on Count One of the information, the other on Count Two — the parties and the court refer to the sentences as one sentence. For ease of discussion, I do the same.

. In doing so, the Government invites this court to disregard the Supreme Court’s instruction in Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).

.In ignoring the procedural error, the court effectively adopts the approach the Government takes in its brief — that this court should entertain its substantive unreasonableness argument straightway without first determining whether the District Court committed procedural error. See infra part III.

. On October 27, 2008, the District Court entered a Final Order of Forfeiture. The order recited that, pursuant to the plea agreement, Hayes agreed to forfeit to the United States $5 million “as proceeds of the illegal acts charged in Counts One and Two of the *1313 Information,” that Hayes had "consented to the entry of a money judgment against him as part of his sentencing in [the case],” and that "based ... [on] the terms of [the] Plea Agreement, the Attorney General is now entitled to possession of said properly.” Doc. 16, at 1-2. The order then provided that Hayes forfeited "the sum of $5,000,000.00 to the United States,” that the Attorney General was "authorized to seize the property forfeited,” and that the “Order of Forfeiture operates as a money judgment against ... Hayes, thereby eliminating the requirement for ancillary proceedings.” Doc. 16, at 2-3.

. See infra part II.A.

. 18 U.S.C. § 3553(a) lists seven factors district courts are to consider when sentencing. The first is "the nature and circumstances of the offense and the history and characteristics of the defendant.” § 3553(a)(1). The second looks to the general purposes of sentencing,
the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
§ 3553(a)(2). The third is “the kinds of sentences available,” the fourth is “the kinds of sentence and the sentencing range” under the Guidelines, the fifth is “any pertinent policy statement ... issued by the Sentencing Commission,” the sixth is “the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,” and, finally, the seventh is "the need to provide restitution to any victims of the offense.” § 3553(a)(3)-(7).

. The total offense level serves as a proxy for the need for a sentence “to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,” § 3553(a)(2)(A), as well as the need to "afford adequate deterrence to criminal conduct,” § 3553(a)(2)(B), and the adjustments, which are not necessarily related to the § 3553(a)(2)(A)-(B) purposes.

. The criminal history category serves as proxy for the need "to protect the public from further crimes of the defendant.” § 3553(a)(2)(C). In other words, it is a proxy for recidivism. Thus, a defendant with a criminal history category of I does not need to be incarcerated to protect the public.

. Based on a defendant's offense level and criminal history category, the court calculates a Guidelines range from the sentencing table. See U.S.S.G. Ch. 5, Pt. A. Each cell in the table has a range of numbers, which corresponds to the upper and lower end of the recommended term of imprisonment for the defendant, based on the total offense level and criminal history category.

. The maximum term of imprisonment provided by statute was ten years for Count One, 18 U.S.C. § 666(a)(2), and twenty years for Count Two, 18 U.S.C. § 1956(a)(1)(B), (h). "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range [as it was for Count One], the statutorily authorized maximum sentence [is] the guideline sentence.” U.S. Sentencing Guidelines Manual § 5Gl.l(a). The guideline range for Count One thus became 120 months. Because the maximum sentence for Count Two exceeded the 135 to 168 months range, the Count Two sentence could exceed the Count One sentence and create a total prison term of ranging from 135 to 168 months.

. Section 5K1.1 of the U.S. Sentencing Guidelines provides:
Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
(1) the court’s evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government’s evaluation of the assistance rendered;
(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3) the nature and extent of the defendant's assistance;
(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5) the timeliness of the defendant’s assistance.

. The Government filed the motion on May 9, 2011. It filed its Sentencing Memorandum the same day and its Amended Sentencing Memorandum on May 10, 2011.

. The Guidelines sentencing table indicates that an offense level of 33 and a criminal history category of I (Hayes's criminal history category) creates a sentence range of 135 to 168 months; an offense level of 25 and a criminal history category of I creates a sentence range of 57 to 71 months. U.S.S.G. Ch. 5, Pt. A.

. The total offense level considers "the seriousness of the average offense sentenced under that particular guideline,” "various factors considered relevant to the defendant’s offense conduct,” and "certain factors considered generally relevant for sentencing purposes.” Scroggins, 880 F.2d at 1210.

. A close reading of the Government's § 5K1.1 motion and its Sentencing Memorandum together presents contradictory propositions that are difficult, if not impossible, to reconcile and applies § 5K1.1 in an unlawful manner. I start with the Memorandum because its service was to support the motion.
The Memorandum does not explain how a sentence of 60 months would accomplish the purposes set out in § 3553(a)(1)(A) and (B), to provide just punishment and deter others from committing the public corruption crimes Hayes committed. Were the Government now to explain how sentences of 60 months would satisfy these (A) and (B) purposes, I suppose that it would point to our precedent which requires a court to take the Guidelines range (135 to 168 months) and the § 3553(a)(A) and (B) factors (that created that range) into account after it tentatively decides the credit it will give the defendant for his § 5K1.1 assistance. See, e.g., United States v. McVay, 447 F.3d 1348, 1356 (11th Cir.2006) ("[A]fter it has decided the length of departure warranted by the substantial assistance motion, the district court is then obliged to take into account the advisory Guidelines range and the sentencing factors set forth in 18 U.S.C. § 3553(a) in fashioning a reasonable sentence.”). Then, having taken the Guidelines range and the § 3553(a) factors into account, the Government would say that a § 5K1.1 departure of 75 months from the low end of the Guidelines range to a sentence of 60 months would not frustrate the sentencing goals reflected in the 135- to 168-month range. Those goals would still be met.
However, the position the Government took in its § 5K1.1 motion suggested that a 75-month departure from the Guidelines range of 135 to 168 months would frustrate those goals. The Government apparently thought that this frustration could be avoided if the District Court lowered the Guidelines range— and thus reconsidered the sentencing goals of the 135- to 168-month range — so that a sentence of 60 months would be an inside-Guidelines sentence. An inside-Guidelines sentence would not likely engender the public criticism a 75-month departure would produce. The Government’s motion therefore recommended that, "based on the defendant’s substantial assistance,” the District Court depart from the Guidelines range of 135 to 168 months to a Guidelines range of 57 to 71 months, then impose a sentence of 60 months imprisonment — a sentence within the Guidelines range.

. Sixty months would be greater than a 50-percent departure from the applicable Guidelines range, 135 to 168 months, but not a departure at all from the 57- to 71-month range.

. The District Court was incorrect to state that the new offense level would help with the fine. The fine remained tied to the original Guidelines range of 135 to 168 months and could not be reduced to the $7,500 to $75,000 range based on substantial assistance.

. In practice, this step requires the parties to justify their proposed sentences in light of § 3553(a). When it comes time to impose a final sentence, however, the judge is required to show how the sentence is consistent with the § 3553(a) factors.

. "The [Sentencing] Commission intends sentencing courts to treat each guideline as carving out a ‘heartland,’ a set of typical cases embodying the conduct that each guideline describes.” U.S.S.G. Ch. 1 Pt. A, introductory cmt. 4(b).

. In Gall, the Supreme Court did not distinguish between variances and departures, which leads me to believe it was using the terms as synonyms. See Thomas W. Hutchison, et al., Federal Sentencing Law and Practice § 11.5 (2014 ed.) (reaching the same conclusion).

. The June 8 hearing was continued until an issue regarding restitution could be resolved. At the July hearing, Martin announced that he and Drennan agreed that Hayes would pay restitution in the sum of $628,454.28.

. The court ordered Hayes to pay $628,454.28 with interest in restitution to the ADPE, payable immediately, and criminal forfeiture as to Count Three.

. The Government’s appeal is authorized by 18 U.S.C. § 3742(b). That section provides as follows:
(b) Appeal by the Government. — The Government may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
(1) was imposed in violation of law;
(2) was imposed as a result of an incorrect application of the sentencing guidelines;
(3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser fine or term of imprisonment, probation, or supervised release than the minimum established in the guideline range, or includes a less limiting condition of probation or supervised release under section 3563(b)(6) or (b)(ll) than the minimum established in the guideline range; or
(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
The Government may not further prosecute such appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General. § 3742(b) (emphasis added). The Government’s brief does not indicate which of the four grounds for appeal it is relying on here. The objection the Government voiced following the District Court’s imposition of sentence implied that it would appeal Hayes's sentence on ground (2), because, as I explain, procedural error is manifestly present. Ground (4) is clearly inapplicable, and from a reading of its brief, I conclude that it is not relying on ground (1). That leaves ground (3).
Ground (3) implies that the district court properly applied the Guidelines, and thus arrived at the appropriate applicable Guidelines range. The Government's position is that the District Court properly applied the Guidelines and correctly arrived at the applicable Guidelines range. So, to maintain this appeal, the Government must establish that Hayes's sentence of probation is a "lesser term of imprisonment ... than the minimum established by the guideline range.” Hayes has not raised the question of whether a sentence of probation is a term of imprisonment; neither has this panel. Consequently, I do not address it.

. We assume that the Gall Court, in using the term "significant procedural error,” meant error that materially affected the defendant's sentence. The procedural error I refer to in this opinion is significant and thus material.

. The majority justifies its decision not to assess the procedural reasonableness of Hayes’s sentence — and to limit its review to the substantive reasonableness of the sentence — based in part on settled Eleventh Circuit precedent that "we do not have a duty to raise and decide issues — even constitutional ones — not mentioned by the parties.” Maj. Op. at 22. If this were an ordinary appeal, I would agree that the court should invoke that doctrine. But this is not an ordinary appeal.
Just as a sentencing court is not bound by the parties’ framing of the Guidelines range in a plea bargain or at sentencing because the court "has an independent obligation to calculate correctly the sentencing range prescribed by the Guidelines,” United States v. Aguilar-Ibarra, 740 F.3d 587, 591 (11th Cir.2014) (internal quotation marks omitted), a court of appeals cannot — consistent with Gall — engage in substantive review without first ensuring the sentence is procedurally reasonable.

. Declaring that a sentence is substantively unreasonable after finding significant procedural error is to render an advisory opinion because the district court, on remand will be resentencing the defendant under a new Guidelines range, a new benchmark.

. That the cases cited above included challenges to both the procedural and substantive reasonableness of the sentence does not undermine the broader logic in each case that substantive-reasonableness analysis is impossible without procedural reasonableness.

. The problem the court would face, though, is that the 41 to 51 months range does not represent the facts and circumstances surrounding Hayes's commission of the bribery in this case. Offense level 22, which drives the 41 to 51 months range, assumes that Hayes’s profits and the victims' losses were between $10,000 and $30,000. See U.S.S.G. § 2B1.1(b)(1)(C). It is a false assumption, however, because the facts are that Hayes’s profits were $5 million and the victims lost $2.4 million. According to the Sentencing Commission, these facts, which the parties and the District Court accepted as true, revealed that a sentence in the range of 135 to 168 months, based on an offense level of 33, was necessary in order to satisfy § 3553(a)(2)(A) and (B)'s sentencing objectives.

. The same instruction would govern the court’s consideration of a party’s request for a variance from the applicable Guidelines range.

. By conceding that the District Court’s use of the 41- to 51-month range was correct, the Government implicitly takes the position that the facts of Hayes’s case support the 41 to 51 months range.